INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, Local Union 1547, International Brotherhood of Electrical Workers, Afl–Cio, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

and

Matanuska Electric Association Intervenor

No. 01–70729.

NLRB No. 333 NLRB 130.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 9, 2002.

Decided Aug. 26, 2002.

of this circuit except as may be provided by Ninth Circuit Rule 36–3.

Before NOONAN, HAWKINS and GOULD, Circuit Judges.

## MEMORANDUM *

The International Brotherhood of Electrical Workers, Local Union 1547 (the IBEW) petitions for a review of a decision of the National Labor Relations Board (the NLRB or Board) dismissing a complaint against Matanuska Electric Association, Inc. (MEA). MEA adopted a bylaw making ineligible for membership on its governing board any person who was a member of any union local acting as a bargaining agent for any group of MEA

* This disposition is not appropriate for publication and may not be cited to or by the courts

employees or who lived in the same household and was financially dependent on such a person. The IBEW charged that adoption of the bylaw violated section 7 of the National Labor Relations Act (the NLRA), 29 U.S.C. § 151 et seq. The Board ruled that the bylaw had a business justification. In agreement with the Board, we deny the IBEW's petition.

## FACTS

The principal facts were stipulated by the parties. We summarize them:

1. MEA is a non-profit electrical cooperative of approximately 33,000 members organized pursuant to the Alaska Electric and Telephone Cooperative Act. Provisions for electrical cooperative membership, board of directors, bylaws and other related topics are set forth under Alaska state law (Alaska Stat. § 10.25.010 et seq.). MEA's board of directors is comprised of seven members who are elected for terms of three years on a rotating basis by the membership. Board members do not receive a salary, but are paid twenty dollars for attendance at each meeting of the board of directors. The board of directors meets on a monthly basis.

2. The function of the board of directors is to manage the business affairs, and general policies of MEA, including the relationship between board and general manager, adoption of work place policies, annual budgetary operations, handling of election results, compensation plans, safety, investment of uncommitted funds, insurance and bonding, approval of depreciation rates, management plans, property leasing guidelines, the ratification of collective bargaining agreements, and the expenditure of association funds.

3. In the spring of 1997, in advance of the annual meeting of the membership, the

of this circuit except as provided by Ninth Circuit Rule 36–3.

MEA received a petition from a group of members requesting a vote on the following bylaw amendment:

PROPOSED AMENDMENT

Add a new Section 3(d) to Article IV, Section 3 of the Association's Bylaws to read as follows:

Section 3 *Qualifications.* No person shall be eligible to become or remain a board member of the Association who:

\* \* \* \* \* \*

(d) is a member, officer, director, or employee of any union local currently acting as a bargaining agent for any group of Association employees or lives in the same household with and is financially interdependent with any person included within this Section 3(d).

4. On April 30, 1997, members of MEA, by a vote of 4,986 in favor and 2,505 opposed, voted to adopt the proposed amendment.

5. The IBEW has a collective bargaining agreement with MEA.

6. During April of 1997, Douglas Mills was a member of the union and on the board of directors at MEA, and was a statutory employee (under NLRA Section 2(3)), who was employed by a statutory employer (under NLRA Section 2(3)), Matanuska Telephone Association. To remain on the MEA board, he resigned from the union.

## PROCEEDINGS

On June 2, 1997, the IBEW filed a charge of an unfair labor practice against MEA for its adoption of the bylaw. On July 24, 1997, the Regional Director of the NLRB dismissed the charge but later rescinded his dismissal. On December 3, 1997, a complaint was issued against MEA. The parties agreed to waive a hearing before an administrative law judge and to submit the case directly to the Board.

On April 13, 2001, the Board issued its decision and order dismissing the complaint. The Board assumed without deciding that the bylaw restricted employees' exercise of Section 7 rights. The Board held that MEA had a business justification in assuring the loyalty to it of its board of directors.

The IBEW appeals.

## ANALYSIS

Imbalance in labor-management relationships arises by "putting supervisors in the position of serving two masters with opposed interests." *Beasley v. Food Fair of North Carolina,* 416 U.S. 653, 662, 94 S.Ct. 2023, 40 L.Ed.2d 443 (1974). A fortiori, that is true when the supervisors are the governing board of the company. As recent events in the corporate world have emphasized, directors with loyalty to the chief executive officer rather than to the company are a danger to the integrity of management. So, too, are directors with putative loyalty to the company's union.

The IBEW argues that the bylaw does not go far enough in excluding all conceivable conflicts of interest and that it goes too far in including household members who are financially interdependent with union members. To be rationally justified, the bylaw need not cover all contingencies, and its reach out to the household members reasonably takes in those who might be subjected to a divisive influence. We must defer to the Board's reasonable interpretation of the NLRA. *Allentown Mack Sales and Serv., Inc. v. NLRB,* 522 U.S. 359, 364, 118 S.Ct. 818, 139 L.Ed.2d 797 (1998).

Accordingly, the petition for review is DENIED.